UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DMAC LLC and FOURMEN CONSTRUCTION, INC.,

                            Plaintiffs,

      -against-

CITY OF PEEKSKILL, CITY OF PEEKSKILL
MAYOR AND COMMON COUNCIL, CITY OF
PEEKSKILL ZONING BOARD OF APPEALS,
CITY OF PEEKSKILL PLANNING COMMISSION,
CITY OF PEEKSKILL DEPARTMENT OF PLANNING,
DEVELOPMENT AND CODE ASSISTANCE, CITY OF
PEEKSKILL DEPARTMENT OF PUBLIC WORKS,
CITY OF PEEKSKILL DEPARTMENT OF PUBLIC
WORKS BUILDING DEPARTMENT, CITY OF
PEEKSKILL CITY PLANNER, DIRECTOR OF THE
CITY OF PEEKSKILL DEPARTMENT OF PLANNING,
DEVELOPMENT AND CODE ASSISTANCE, DAVID
GREENER in his official capacity as the DIRECTOR
OF PUBLIC WORKS and any successor to such
position, VICTOR PIZZELLA, in his official capacity as
the CITY OF PEEKSKILL BUILDING INSPECTOR and
any successor to such position, JEFFREY P. ROMA,
in his official capacity as the CITY OF PEEKSKILL
CODE ENFORCEMENT OFFICER and any successor
to such position, and THE WESTSIDE
NEIGHBORHOOD ASSOCIATION,

                            Defendants.
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/17/12

**MEMORANDUM DECISION
AND ORDER**

09 Civ. 5093 (GAY)

      Presently before this Court is plaintiffs' motion for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure, premised upon defendant City of Peekskill's alleged spoliation of evidence. For the reasons that follow, plaintiffs' motion is granted.

**I. BACKGROUND**

      Plaintiffs are the owners/developers of the subject property located in the City of Peekskill, New York. In early 2003, in conjunction with their proposal to construct five

townhouses on the subject property, plaintiffs began the process of obtaining the necessary land use approvals.  On January 23, 2007, plaintiffs filed the signed Site Plan Subdivision Plat with the County of Westchester and, shortly thereafter, began construction on five townhouses in a development known as The Cove, located on Simpson Place in Peekskill.  After plaintiffs had completed all grading, drainage and foundations and most of the framing, the Westside Neighborhood Association began to strongly vocalize their opposition to the townhouses' construction.  In March 2007, the City of Peekskill issued a Stop Work Order.  On June 1, 2009, plaintiff commenced the instant action alleging that defendants, motivated solely by political concerns, engaged in a persistent course of conduct designed to prevent plaintiffs from completing construction in violation of their constitutionally protected property rights including, but not limited to, plaintiffs' substantive due process and equal protection rights.

During discovery, in response to plaintiffs' request for the production of e-mails, the City of Peekskill advised plaintiffs that the City did not have a formal e-mail retention policy in place during the relevant time period, that it is within the "sole discretion" of the City's staff and elected officials to delete e-mails and, therefore, that "both mayors and all members of the City Common Council do not have any pre-litigation e-mails regarding Simpson Place a.k.a. "The Cove" construction project." See Notice of Motion, Exhibit B (August 26, 2011 letter from Victoria Bowman with attached affidavit of Greg Matera).  Nonetheless, the City produced e-mails from four employees of the City's Planning and Building Department and "a few limited e-mails between City staff and council members." See Declaration of Katherine Zalantis in Support of Plaintiffs' Spoliation Motion, at ¶ 9.

As a result of discovery requests made to a non-party (the Attorney General's Office) and/or to defendant Westside Neighborhood Association ("WNA"), plaintiffs received a significant number of e-mails involving members of the City Common Council which, according to plaintiffs, "show the clear position taken by the City of Peekskill council members about the issuance of the Stop Work Order and the events after the Stop Work Order's issuance." See id., at ¶ 11. Plaintiffs specifically allege, based upon the e-mails obtained "only by sheer luck" from either the Attorney General's Office or from the WNA, that the members of the City Common Council openly "voiced their political maneuverings and conspiracy to 'send this project back to the drawing board,' to start the land use review process 'anew,' to have a 'whiddling [sic] away process' to have four units instead of five, to devise road blocks through more stringent laws and to encourage the community to rise up." See Memorandum of Law in Support of Plaintiffs' Spoliation Motion ("Pls. Mem."), at 11-12. Plaintiffs also contend, based on the e-mails obtained, that members of the City Common Council sent/received a substantial amount of relevant e-mails which apparently have been destroyed. Thus, plaintiffs filed the instant motion seeking an adverse inference and asking the Court to strike certain of the municipal defendants' affirmative defenses based upon the City's alleged spoliation of evidence.

## II. LEGAL STANDARD FOR SPOLIATION

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007) (quotation and citation omitted). A party moving for sanctions for spoliation of

evidence carries the burden to prove: 1) that the spoliating party had control over the evidence in question and a duty to preserve it at the time it was destroyed, lost, or significantly altered; 2) that said evidence was destroyed, lost, or significantly altered with a culpable state of mind; and 3) that said evidence was relevant to the moving party's claims or defenses. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002). Here, in its opposition to the instant motion, the City of Peekskill does not address plaintiffs' arguments regarding the first prong and, thus, effectively concedes that it had a duty to preserve the e-mails in question. See Memorandum of Law Submitted in Opposition to Plaintiffs' Spoliation Motion ("Opp. Mem."). The City of Peekskill challenges only whether it possessed the requisite culpability and the relevance of the e-mails in question. See id. at 1-6.

A. Culpability

In the Second Circuit, "a 'culpable state of mind' ranges from willful destruction in bad faith to simple negligence." See Schwarz v. Fedex Kinko's Office, No. 08 Civ. 6486, 2009 WL 3459217, at *7 (S.D.N.Y. Oct. 27, 2009). Here, the City of Peekskill contends that plaintiffs have failed to prove the requisite culpable state of mind because they offer no evidence to refute the City's assertion that "[t]he e-mails at issue were disposed of as an innocent, routine course, as the City did not have a formal e-mail retention policy in place during the relevant pre-litigation time period of 2003 through May 31, 2009." See Opp. Mem. at 4. The City's argument is flawed, however, because it rests on the assumption that the City's failure to maintain a formal e-mail retention policy was not, in itself, problematic. Because the City has effectively conceded that it had a duty to preserve the e-mails in question, its failure to maintain a formal e-mail

retention policy was at least negligent.

Further, even accepting the City's factual statements as true, given its sparse opposition to the instant motion (as to the first and second prong of plaintiffs' burden, particularly) the Court finds the City to have been grossly negligent in the destruction of the e-mails in question.  First, plaintiffs cite New York State law for the proposition that the City had a duty to preserve the e-mails in question apart from, and over and above, its obligations arising from the instant litigation.  See Pls. Mem. at 3-5, 7-8; N.Y. Arts and Cultural Affairs Law, Article 57-A (Local Government Records Law).  On its face, the Local Government Records Law appears to create said obligation.  Because the City ignores plaintiffs' detailed, specific argument on the issue, it effectively concedes that its failure to preserve the e-mails in question violates New York State law.  Second, apart from its conclusory statement that the relevant pre-litigation time period ended on May 31, 2009, the City proffers no argument in opposition to plaintiffs' contention that the City's obligation to preserve records in connection with the instant litigation arose in March 2007, when the City issued a Stop Work Order.  It is clear from the record–and the City proffers no evidence to the contrary–that the Stop Work Order was the beginning of a protracted, continuous challenge to the viability of The Cove development, which culminated in the instant lawsuit.  "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir.2001).  Plaintiff points out that the City commenced two prosecutions (arising out of alleged building violations) against plaintiffs in December 2007 and June 2008.  Even assuming that the City's duty

to preserve did not arise in March 2007, it certainly arose in December 2007 upon commencement of the first prosecution.  Finally, although the City maintains that its counsel initiated and communicated a litigation hold beginning on June 1, 2009, plaintiff proffers the deposition testimony of Councilwoman Claxton, wherein she testified that at no time was she ever advised to preserve communications, including e-mails.  See Notice of Motion, Exhibit K, p.26.  The City does not contend that its litigation hold would not extend to members of the City Common Council, nor does it proffer evidence (or even affirm) that its litigation hold was specifically communicated to Common Council members.  In sum, based upon the record as it stands, the Court finds that the City's spoliation of the e-mails in question was grossly negligent.

B. Relevance

Sanctions are not warranted merely because information is lost; the evidence must be shown to have been "relevant."  See Residential Funding Corp., 306 F.3d 99, 107.  "When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance."  Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y.2004).  However, "when the destruction is negligent, relevance must be proven by the party seeking sanctions."  Id.  "[R]elevant in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.  Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction."  Residential Funding Corp., 306 F.3d 99, 108–09 (quotation marks, citations, and alterations omitted).  "In certain cases where the spoliator acts

with at least gross negligence, however, relevance as required for sanctions (modest or severe) may be presumed." Kratsov v. Town of Greenburgh, No. 10-CV-3142, 2012 WL 2719663, at *6 (S.D.N.Y. July 9, 2012).

Here, I need not determine whether the City's grossly negligent conduct rose to a level sufficient to warrant a presumption of relevance, because plaintiffs have clearly satisfied their burden of adducing evidence from which a reasonable trier of fact could infer that the e-mails in question would have been favorable to their case. In the first instance, the Court has reviewed the e-mails attached as exhibits to the instant motion, and concludes that a reasonable factfinder could construe them as favorable to plaintiffs' case. Moreover, as detailed in plaintiffs' submissions in support of the instant motion, plaintiff has proffered evidence of the existence of e-mails similar in nature and temporally proximal to the ones produced, but which have been destroyed. For example, the City does not dispute the existence of an non-produced exchange of e-mails between Mayor Foster and constituent Ken Martin, whose protestations seem to have been a catalyst for the City's decision to issue the Stop Work Order. Nor does the City dispute the existence of other non-produced e-mails between council members, neighbors and representatives of the WNA. Mayor Foster testified at deposition that she exchanged e-mails with Tina Bonger (a member of WNA) discussing the fact that members of the WNA were upset about The Cove project. See Notice of Motion, Exhibit N. Mayor Foster also testified that she exchanged e-mails regarding the Cove Project with many other individuals who lived in the area of The Cove. See id. Councilwoman Drew Claxton testified that she received e-mails regarding The Cove from Tina Bonger as "part of a global list" and that Ms. Bonger normally sent e-mails

regarding The Cove to the entire Common Council.  See Notice of Motion, Exhibit O.  Ms. Bonger testified that her e-mails were sent to all council members.  See Notice of Motion, Exhibit P.

"Courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence, because doing so would allow parties who have destroyed evidence to profit from that destruction." Cedar Petrochemicals, Inc. v. Donghu Hannong Chem. Co. Ltd., 769 F. Supp.2d 269, 290 (S.D.N.Y. 2011).  Mindful of said caution, the Court concludes that plaintiffs have proffered sufficient evidence from which a reasonable factfinder could infer that additional relevant e-mails–favorable to plaintiffs–existed but were not produced.  Accordingly, plaintiffs' motion for sanctions based upon the City's spoliation of evidence is granted.  I now turn to the issue of appropriate sanction(s).

C. Choice of Sanctions

This Court is vested with wide discretion in determining an appropriate sanction. See Reilly v. Nat-West Markets Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999).  In doing so, the Court should consider whether the sanction "(1) deter[s] parties from engaging in spoliation, (2) place[s] the risk of an erroneous judgment on the party who wrongfully created the risk, and (3) restore[s] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation marks omitted).

Plaintiffs seek an adverse inference instruction and also request that the Court strike certain of defendants' affirmative defenses.  I decline to strike any of defendants'

affirmative defenses, as I find that other alternative sanctions are adequate to satisfy the "prophylatic, punitive and remedial rationales underlying the [spoliation] doctrine." See id. To that end, in the first instance, I find that an adverse inference instruction is appropriate here.  Specifically, plaintiffs are entitled to an adverse inference instruction to the effect that the City negligently destroyed e-mails similar in nature to the ones produced, and that said e-mails would have been favorable to plaintiffs' case.  If the case proceeds to trial, the parties shall propose specific language for the adverse inference instruction in their pretrial submissions.  I also find it appropriate to award plaintiffs costs and fees arising from the instant motion.  With respect to said costs and fees, plaintiffs' counsel shall submit their application to the Court within fourteen (14) days of the date of this Order, and defendants may respond within fourteen (14) days of plaintiffs' submission.

Dated: September ___, 2012
White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.